IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 8, 2021

## REVAIL MURPHY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 18-07364        J. Robert Carter, Jr., Judge
_____

### No. W2020-01298-CCA-R3-PC
_____

The Petitioner, Revail Murphy, pled guilty in two separate cases to aggravated assault and sexual battery, respectively. The trial court sentenced the Petitioner as a Range III, persistent offender to a total effective sentence of ten years, to be served at forty-five percent. On appeal, the Petitioner asserts that he received ineffective assistance of counsel, contending that his guilty plea for aggravated assault was not "knowingly, voluntarily, and intelligently entered." Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

James J. Lee, Memphis, Tennessee, for the Petitioner, Revail Murphy.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Amy Weirich, District Attorney General; and Neil Umsted, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On December 13, 2018, a Shelby County grand jury indicted the Petitioner for two counts of convicted felon in possession of a firearm and one count of aggravated assault. On February 13, 2019, the Petitioner pled guilty to aggravated assault in the instant case and sexual battery in an unrelated case. The convicted felon in possession of a firearm charges were dismissed. The trial court sentenced the Petitioner as a Range III, persistent offender to a total effective sentence of ten years, to be served at forty-five percent. At the

guilty plea hearing, the State summarized the proof that would have been presented for the aggravated assault charge had the case gone to trial:

> [T]he State's proof would have shown that on or about May 12th of 2018[,] the victim in this case, Andre Ward, was sitting in the passenger seat of one of his friend[']s cars. While waiting to leave[,] he was blocked in, the [Petitioner] approached him with a gun in his hand and ordered him out of his car.
>
> The victim got out and started to walk away, when he was about ten to 15 feet away[,] he heard gunshots fired at him[,] so he ran. He was not hit or injured. He did identify the [Petitioner] in a photo lineup as the person who approached him and shot at him.

During the Petitioner's plea colloquy, the trial court asked the Petitioner if he understood the rights he was waiving by pleading guilty. The Petitioner answered affirmatively, and he also agreed that his pleas were entered "freely and voluntarily." He further affirmed that he had worked with his attorney regarding his guilty plea, that they had "talked the cases over fully[,]" that he understood and was not confused about his guilty pleas, that he had not been coerced or forced to make the guilty pleas, and that he did not have any questions for the trial court. Following the plea colloquy, the trial court found that the Petitioner's pleas were "freely and voluntarily entered" and that "[t]he waiver [wa]s knowingly and intelligently made free from threats or coercion."

On December 6, 2019, the Petitioner filed a pro se motion for post-conviction relief, alleging ineffective assistance of counsel. Appointed counsel filed an amended petition on February 14, 2020. In the amended petition, the Petitioner asserted that he received ineffective assistance of counsel with respect to his guilty pleas, arguing that his plea was "not knowing and voluntary[,]" and he only accepted the guilty plea agreement "because he lacked confidence that his trial counsel would aggressively defend the case[.]" The State filed a response to the petition the same day, replying that the Petitioner received effective assistance of counsel and entered knowing and voluntary pleas.

On August 19, 2020, the post-conviction court held an evidentiary hearing on the amended petition for post-conviction relief. At the hearing, the Petitioner testified that he did research in the law library while incarcerated and concluded that he had been "overcharged" after looking at the statutes for aggravated assault and reckless endangerment. He stated that trial counsel never explained to him the differences between aggravated assault and reckless endangerment. He further stated that trial counsel did not discuss sentencing ranges or explain lesser included offenses to him, and trial counsel allegedly told him that he would "end up [getting] like seventy something years because

- 2 -

[he] didn't know nothing about law" if he chose to go to trial. The Petitioner further contended that trial counsel "did not do what she was supposed to do as far as investigating or hir[ing] a private investigator." When asked whether he brought up his concerns with trial counsel, the Petitioner explained that trial counsel would "blow it off to the side like it just really wasn't anything because she thought that [he] was dumbfounded to the law[.]" He also explained that he was confused by pleading guilty in different cases at the same time. The Petitioner finally explained that he told the trial court that he understood his guilty pleas because he was "kind of nervous and afraid" and "really didn't know what [he] was signing[.]"

On cross-examination, the Petitioner conceded that he knew what he was charged with and "how much time [he was] getting" when he signed his guilty plea agreement. He further testified that he did not complain about trial counsel's representation during his plea colloquy because he "was afraid."

Trial counsel testified that she had been employed with the public defender's office for eight years and exclusively practiced criminal law. She explained that the victim in the aggravated assault case was a "reluctant witness[,]" and another witness, who was dating the Petitioner and the victim, was "not going to be a cooperative witness." She affirmed that she went over the discovery with the Petitioner, and she was "satisfied th[at] the aggravated assault was an appropriate charge[.]" She stated that she met with the Petitioner "at least three times in jail . . . possibly more" and saw him at his numerous court dates. Trial counsel agreed that she was "able to communicate effectively" with the Petitioner. She testified that an investigator had taken statements from four witnesses immediately after the Petitioner waived his preliminary hearing. Trial counsel explained that the Petitioner's plea agreement had been discussed in "pretty great length" with him because there was "a lot of going back and forth" with the State. She further explained that although there were "communication barriers" due to the Petitioner's mental illness and intellectual disability, she ultimately felt that "he had decided that taking this offer was better for him than proceeding to trial on his three cases." Trial counsel stated that she would not have allowed the Petitioner to move forward with his guilty pleas if she felt he did not understand what he was doing and was being coerced.

On cross-examination, trial counsel reiterated that an investigator interviewed the people the State was going to call as witnesses. She testified that she discussed "the results of that investigation" with the Petitioner, and he understood. She further explained that it was "difficult for [the Petitioner] to wrap his mind around" the fact that the prosecutor was proceeding with the case despite the victim's desire not to prosecute. Trial counsel stated that she discussed with the Petitioner the difference between aggravated assault and reckless endangerment, and she told him that she believed the State would be able to prove aggravated assault if the case went to trial. She agreed that there were several guilty pleas

- 3 -

handled by different attorneys in different courtrooms on the same day, which could have been confusing to the Petitioner, but she "ultimately fe[lt a]s though he understood his options[] and chose to take that offer."

When questioned by the post-conviction court, trial counsel clarified that all of the Petitioner's pleas were negotiated as part of a "package[,]" and the Petitioner could not choose to accept only one of the agreements but instead had to plead to everything in order to accept any of the agreements. The plea package included an agreement to reduce an aggravated sexual battery charge to sexual battery sentenced as time served. She agreed that there was a possibility of consecutive sentencing if the Petitioner's cases had gone to trial.

On September 16, 2020, the post-conviction court entered a written order denying relief. In the order, the post-conviction court found that there was "no evidence that [trial] counsel's performance was deficient[,]" and "[t]he guilty plea was entered knowingly, intelligently[,] and voluntarily with the assistance of competent counsel." The court further found that the Petitioner "has had a change of heart and now wants to change his mind[,]" despite testifying at his plea colloquy that he understood the plea agreement, did not have any questions, and had fully discussed his cases with his attorneys. The Petitioner filed a timely notice of appeal on September 21, 2020, and this case is now properly before this court for review.

## ANALYSIS

On appeal, the Petitioner asserts that the trial court "abused its discretion in finding that the Petitioner received effective assistance of counsel when [the] Petitioner demonstrated that his guilty plea was not knowingly, voluntarily, and intelligently entered." The Petitioner specifically contends that he would "not have entered such a plea" if he had understood "the difference between aggravated assault and reckless endangerment[.]" The State responds that the Petitioner has not "overcome the strong presumption that his plea was entered knowingly intelligently, and voluntarily[.]" We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their

- 4 -

testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases. Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted). In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner must show that, but for counsel's errors, he would not have entered his guilty plea and would have proceeded to trial. Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Finally,

as relevant to the issues herein, the Tennessee Supreme Court has held that "[f]ailure to conduct a reasonable investigation constitutes deficient performance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999).

> Counsel must conduct appropriate investigations, both factual and legal, to determine what matters of defense can be developed. The Supreme Court has noted that the adversary system requires that "all available defenses are raised" so that the government is put to its proof. . . . And, of course, the duty to investigate also requires adequate legal research.

Baxter, 523 S.W.2d at 932-33 (quoting United States v. DeCoster, 487 F.2d 1197, 1203-04 (D.C. Cir. 1973)). In any ineffective assistance of counsel case, however, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Burns, 6 S.W.3d at 462 (quoting Strickland, 466 U.S. at 691).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

The validity of a guilty plea is a mixed question of law and fact that is reviewed de novo. Lane, 316 S.W at 562. To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. Id. (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977) superseded on other grounds by rules as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea[.]" Mackey, 553 S.W.2d at 340; See Tenn. R. Crim. P. 11(b)(1). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Lane, 316 S.W.3d at 562 (quoting Grindstaff, 297 S.W.3d at 218). If a guilty plea is not

knowingly, voluntarily, and intelligently entered, then the defendant has been denied due process, and the guilty plea is void. Id. (citations omitted).

Applying the above law to the instant case, we conclude that the Petitioner is not entitled to relief. In the context of a guilty plea, trial counsel's effectiveness is only relevant to the extent that it affects the voluntariness of the plea. Ford v. State, No. E2018-00702-CCA-R3-PC, 2019 WL 1220790, at *3 (Tenn. Crim. App. Mar. 14, 2019). In the instant case, the Petitioner asserts that his pleas were not knowing and voluntary because he did not understand the difference between aggravated assault and reckless endangerment. He further references his previous statements that trial counsel did not go over discovery with him, failed to investigate the case, and failed to advise him on his package plea deal as evidence of his "complete lack of understanding regarding all aspects of this agreement."

In denying the petition, the post-conviction court found that trial counsel had "conducted an investigation, met with [the] Petitioner to discuss the results, and presented him with the State's offer to dispose of all his cases. [The] Petitioner chose to accept it." The trial court implicitly accredited trial counsel's testimony over the Petitioner's. The court further found that the Petitioner's "assertions, now, that his attorney was somehow responsible for his decisions to plead guilty [are] simply not supported by credible evidence." The record reflects that the Petitioner understood the terms of his plea agreement when he entered the plea. At the guilty plea hearing, the Petitioner indicated that he understood the agreement, did not have any questions, had fully discussed the agreement with his attorney, and was not being forced to plead guilty. At the post-conviction hearing, trial counsel testified that she had gone over the agreement and discovery with the Petitioner, had visited him at least three times in jail and several more times at his multiple court hearings, and had investigated his case. She further testified that she and the Petitioner discussed the difference between aggravated assault and reckless endangerment, and she believed that the State would be able to prove aggravated assault at trial, which carried a possible sentence of fifteen years based on the Petitioner's Range III, persistent offender classification. Nothing in the record suggests that trial counsel's advice regarding the Petitioner entering guilty pleas constituted ineffective assistance. Because the Petitioner has failed to establish deficient performance, he is not entitled to relief.

## CONCLUSION

Based upon the foregoing reasoning and analysis, we affirm the judgment of the post-conviction court.

_____

CAMILLE R. MCMULLEN, JUDGE